**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8                            UNITED STATES DISTRICT COURT
9                           NORTHERN DISTRICT OF CALIFORNIA
10
11   BENDER,                                    No. C-10-5333-DMR
12                Plaintiff,                     **ORDER GRANTING DEFENDANT'S**
                                                 **MOTION FOR SUMMARY JUDGMENT**
13       v.                                      **IN PART AND REMANDING FOR**
                                                 **FURTHER PROCEEDINGS**
14   ASTRUE,
     *Commissioner of Social Security*,
15
                  Defendant.
16   _____/
17
18                                  I. INTRODUCTION
19        Plaintiff Robert Bender ("Plaintiff" or "Bender") seeks review of his application for
20   Supplemental Security Income ("SSI") disability benefits.  Defendant Social Security Commissioner
21   ("Defendant" or "Commissioner") denied his application after determining that Bender was not
22   disabled under section 1614(a)(3)(A) of Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-
23   1383(f).  Bender now requests judicial review of the Commissioner's decision pursuant to 42 U.S.C.
24   § 405(g).  Both parties filed motions for summary judgment.  For the reasons stated below, the court
25   grants Defendant's motion for summary judgment in part and remands this action to the
26   Commissioner for further proceedings.
27
28

**United States District Court**
For the Northern District of California

## II. DISPUTED ISSUES

1. Whether the administrative law judge ("ALJ") properly evaluated all of Bender's medically-determinable impairments;

2. Whether the ALJ properly evaluated the opinions of Plaintiff's treating and examining physicians;

3. Whether the ALJ erred by not addressing lay testimony; and

4. Whether the ALJ committed factual errors that mandate reversal.

## III. STANDARD OF REVIEW

Bender seeks review of the Commissioner's decision under § 405(g), which permits judicial review of the Commissioner's final decision. *Id.* The court will uphold the disability determination "unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is evidence within the record, considered as a whole, that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" but less than a preponderance. *Id.* If the evidence reasonably can support either accepting or rejecting the application, the court "may not substitute its judgment for that of the Commissioner" and must affirm the Commissioner's decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). The court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir.2006) (citation and quotation marks omitted).

## IV. DISCUSSION

### A. THE ALJ PROPERLY EVALUATED ALL OF BENDER'S MEDICALLY DETERMINABLE IMPAIRMENTS

Bender argues that the ALJ erred by not including the following impairments in his analysis: shoulder tendonitis, possible impingement of the right shoulder, somatoform disorder, atrophy of the right calf, crepitus in both knees, absent Achilles reflexes, off-balance tandem walking, and allegations of pain in his knees. (Pl.'s Mot. 5.) The court, however, finds substantial evidence on the record to support the ALJ's impairment conclusions.

1    *1. Applicable Law*

2        At step two of the five-step sequential evaluation for disability claims, the ALJ must

3    determine whether the claimant has one or more severe impairments that significantly limit a

4    claimant's ability to perform basic work activities.  20 C.F.R. §§ 404.1520(a)(4)(ii) and (c);

5    416.920(a)(4)(ii) and (c).  In addition, when assessing a claimant's residual functional capacity,

6    ("RFC"), an ALJ must consider all of the claimant's medically determinable impairments, both

7    severe and non-severe.  §§ 416.920(e), 416.945; *see Howard v. Barnhart*, 341 F.3d 1006, 1010 (9th

8    Cir. 2003); *see also* SSR 96-8p, 1996 WL 374184, at *5 ("In assessing RFC, the adjudicator must

9    consider limitations and restrictions imposed by all of an individual's impairments [because]

10   limitations due to such a 'not severe' impairment may prevent an individual from performing past

11   relevant work or may narrow the range of other work that the individual may still be able to do.").

12   *2. Analysis*

13       The ALJ did not err by omitting tendonitis and possible impingement in the right shoulder in

14   his finding of severe impairments at step 2 of the sequential evaluation.  Bender's argument appears

15   to treat an initial diagnosis as a definitive one.  While the record contains early diagnoses of

16   tendonitis and possible impingement in the right shoulder, these diagnoses did not reappear in later

17   examinations.  Following Dr. Hsiao's initial diagnosis that Bender had tendonitis and possible

18   impingement of the right shoulder in 2004, Bender received an X-ray which did not confirm the

19   diagnosis.  (*See* A.R. 397, 400, 402.)  Thereafter, no physician reached a similar diagnosis.  In fact,

20   the medical opinion submitted by Bender's treating physician in this case did not include shoulder

21   tendonitis or impingement, or any of the other impairments raised by Bender in this appeal.  (A.R.

22   454).  The ALJ concluded that the X-ray and subsequent progress notes did not support the

23   conclusion that this amounted to a severe impairment.  (*See* A.R. 21 (citing A.R. 431-32) ("There

24   was no sign of shoulder impingement . . . .  A right shoulder X-ray was normal.  A thoracolumbar

25   spine X-ray was essentially normal with evidence of minimal hypertrophic spurring . . . .").)  These

26   records provide "substantial evidence" for the ALJ's decision not to find a severe shoulder tendonitis

27   or impingement impairment.  *See* § 416.927; *see also Osenbrock v. Apfel*, 240 F.3d 1157, 1165

28   (stating that most recent medical reports are "highly probative").

United States District Court

For the Northern District of California

The ALJ correctly omitted somatoform disorder from his impairment findings.  Bender failed to present the disorder for consideration at the hearing, contrary to the evidentiary burden.  *See* § 423(d)(5)(A).  He points only to a comment from a testifying medical expert at the ALJ hearing to support a claim that he suffers from somatoform disorder.  (Pl.'s Mot. 5.)  As a matter of law, the ALJ did not err in disregarding an alleged impairment of somatoform disorder where Bender did not raise the issue in the hearing, Bender supported his argument with only a testifying expert's comment, and nothing in the record backs up his contention.  *See Bowser v. Comm'r of Soc. Sec.*, 121 F. App'x 231, 236-37 (9th Cir. 2005) ("The ALJ did not err in failing to account for the effects of a medical impairment . . . that Claimant never raised before the ALJ and is not readily apparent from the record.")  Moreover, the medical expert only stated that the record reflects "a great deal of somatization."  (A.R. 54.)  He did not discuss or provide a diagnosis of somatoform disorder.

Lastly, Bender has identified the ALJ's failure to discuss the following alleged impairments as an additional reason for overturning the ALJ's decision:  atrophy of his right calf, crepitus in both knees, absent Achilles reflexes, off-balance tandem walking, and the allegation of pain in his knees.  (Pl.'s Mot. 5.)  Bender fails to note, however, that in determining Bender's RFC, the ALJ took these impairments into consideration directly or as a means of illuminating the severity of Bender's more pronounced impairments.  (*See, e.g.*, A.R. 23 (discussing effects of balancing problems, muscle atrophy, and absent reflexes in severity of thoracolumbar spinal arthritis) 27 (noting Bender's balancing problems) (noting that Bender suffers from various physical limitations that ALJ previously ascribed in part to above non-severe impairments) 26 (setting forth RFC of light work with additional restrictions).)  The court therefore finds that the ALJ appropriately considered all of Bender's severe and non-severe impairments when determining his RFC.

B. THE ALJ IMPROPERLY EVALUATED MEDICAL OPINIONS IN THE ADMINISTRATIVE RECORD

Bender argues that the ALJ misapplied the regulatory standard for considering physician opinions when the ALJ allegedly disfavored the reports of consultative examining physician Dr. Cynthia Amelon and treating physician Dr. Jayum Starks without adequate basis, in favor of medical opinions offered by physicians who neither examined nor treated Bender.  (Pl.'s Mot. 6-7.)  Upon

**United States District Court**

For the Northern District of California

1  review of the record, the court finds that the ALJ did not properly weigh the examining physicians'

2  medical opinions in his determination.

3       *1. Applicable Law*

4       Courts employ a hierarchy of deference to medical opinions based on the relation of the

5  doctor to the patient.  Namely, courts distinguish between three types of physicians: those who treat

6  the claimant ("treating physicians") and two categories of "nontreating physicians," those who

7  examine but do not treat the claimant ("examining physicians") and those who neither examine nor

8  treat the claimant ("nonexamining physicians").  *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

9  1995).  A treating physician's opinion is entitled to more weight than an examining physician's

10  opinion, and an examining physician's opinion is entitled to more weight than a nonexamining

11  physician's opinion.  *Id.*

12       The Social Security Act tasks the ALJ with determining credibility of medical testimony and

13  resolving conflicting evidence and ambiguities.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir.

14  1998).  A treating physician's opinion, while entitled to more weight, is not necessarily conclusive.

15  *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted).  To reject the opinion of

16  an uncontradicted treating physician, an ALJ must provide "clear and convincing reasons."  *Lester*,

17  81 F.3d at 830; *see, e.g.*, *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (affirming rejection of

18  examining psychologist's functional assessment which conflicted with his own written report and

19  test results); *see also* § 416.927(d)(2); SSR 96-2p, 1996 WL 374188.  If another doctor contradicts a

20  treating physician, the ALJ must provide "specific and legitimate reasons" supported by substantial

21  evidence to discount the treating physician's opinion.  *Lester*, 81 F.3d at 830.  The ALJ meets this

22  burden "by setting out a detailed and thorough summary of the facts and conflicting clinical

23  evidence, stating his interpretation thereof, and making findings."  *Reddick*, 157 F.3d at 725.

24  "[B]road and vague" reasons do not suffice.  *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir.

25  1989).  This same standard applies to the rejection of an examining physician's opinion as well.

26  *Lester*, 81 F.3d at 830-31.  A nonexamining physician's opinion alone cannot constitute substantial

27  evidence to reject the opinion of an examining or treating physician, *Pitzer v. Sullivan*, 908 F.2d

28  502, 506 n.4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984), though a

United States District Court

For the Northern District of California

1   nonexamining physician's opinion may be persuasive when supported by other factors. *See*

2   *Tonapetyan*, 242 F.3d at 1149 (noting that opinion by "non-examining medical expert . . . may

3   constitute substantial evidence when it is consistent with other independent evidence in the record");

4   *Magallanes*, 881 F.2d at 751-55 (upholding rejection of treating physician's opinion given

5   contradictory laboratory test results, reports from examining physicians, and testimony from

6   claimant). An opinion that is more consistent with the record as a whole generally carries more

7   persuasiveness. *See* § 416.927(d)(4).

8       *2. Analysis*

9       Bender contends that the ALJ inappropriately disregarded Dr. Amelon's medical report in

10  favor of a nonexamining physician's opinion. After a close examination of the ALJ's decision and

11  the record, the court agrees. After performing numerous diagnostic tests, Dr. Amelon, a consultative

12  examining physician, concluded that Bender could, *inter alia*, "stand and walk for two hours with a

13  break every one hour. He can sit for six hours with a break every two hours." (A.R. 340; *see* A.R.

14  335-41.) Nevertheless, the ALJ concluded assigned Bender a much less restrictive RFC, finding that

15  Bender "can walk and/or stand for 6 hours in an 8-hour workday." (A.R. 26.) In his analysis, the

16  ALJ made no mention Dr. Amelon's report -- contrary to what the law requires -- and appears to

17  have based his conclusion on the report of non-examining physician Dr. Herbert Mitchell. (A.R. 26

18  (citing A.R. 342-46).) In light of the ALJ's  omission of an examining physician's testimony and

19  reliance on that of a non-examining physician, the court finds that the ALJ failed to provide

20  "specific and legitimate reasons" to discount Dr. Amelon's opinion. *Lester*, 81 F.3d at 830; *see*

21  *Reddick*, 157 F.3d at 725 (holding that ALJ provides specific and legitimate reasons to discount

22  examining physician's opinion "by setting out a detailed and thorough summary of the facts and

23  conflicting clinical evidence, stating his interpretation thereof, and making findings"). The court

24  therefore remands this matter to the Commissioner for further proceedings. The ALJ is instructed to

25  examine the medical record as a whole.[1]

26

27

28

---

[1]  Since the matter is remanded for further proceedings, and with instructions to the ALJ to evaluate the disability claim based on the entire medical record, the court does not reach the question of whether the ALJ's decision improperly discounted the medical opinion of treating physician Dr. Jayum Starks.

United States District Court

For the Northern District of California

### C. THE ALJ DID NOT ERR BY FAILING TO ADDRESS LAY TESTIMONY

Bender identifies two lay witness reports which the ALJ did not mention in his evaluation of Bender's application, claiming that the ALJ erred.  (Pl.'s Mot. 7.)  The court finds no reversible error.

#### 1. Applicable Law

A plaintiff may submit non-medical sources in support of a disability claim.  *See* § 416.927. Non-medical sources can be probative in determining a claimant's symptoms, but their value varies on a case-by-case basis.  SSR 06-03p, 2006 WL 2329939, at *5.  Medical diagnoses are categorically beyond the competence of lay witnesses and, therefore, do not constitute "competent evidence."  *See* § 416.913(a).  However, lay witness testimony may be considered with respect to symptoms and inability to work.  *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

Ordinarily, if the ALJ "wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness."  *Stout v. Comm'r*, 454 F.3d 1050, 1056 (9th Cir. 2006). If an ALJ fails to do so, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."  *Id.*

The Ninth Circuit has articulated three specific bases for upholding an ALJ's determination on disability that fails to discuss third-party testimony.  First, if the lay person's testimony is "internally inconsistent," an ALJ can disregard it without reference.  *Lockwood v. Comm'r*, 397 F. App'x 288, 291 (9th Cir. 2010).  Second, if the ALJ failed to properly assign full weight to a third-party's testimony to an impairment's severity, there is no reversible error if "substantial evidence" contradicts the testimony.  *See Hart v. Astrue*, 349 F. App'x 175, 177 (9th Cir. 2009).  Finally, if the report does not introduce new evidence and is merely duplicative, the ALJ does not err by not evaluating the testimony.  *See Zerba v. Comm'r of Soc. Sec. Admin.*, 279 F. App'x 438, 440 (9th Cir. 2008) (holding that failure to address cumulative lay testimony is harmless error); *Rohrer v. Astrue*, 279 F. App'x 437, 437 (9th Cir. 2008) (cumulative questionnaire).

United States District Court

For the Northern District of California

*2. Analysis*

On May 19, 2006, Daniel Walker, Bender's friend, submitted a "Third-Party Function Report" attesting to Bender's physical and mental limitations.  (A.R. 194-201.)  Bender objects to the ALJ's failure to mention the report, noting that failure to do so is commonly grounds for remand.  (Pl.'s Mot. 7.)  However, upon review, Walker's report is unreliable, contradicted elsewhere, and duplicative such that failure to refer to it does not provide a basis for remand.  Portions of the report are internally inconsistent.  Walker claims that Bender "cannot move his arms [and] feet," but nonetheless "needs a cane to walk."  (A.R. 194-98.)  Other portions of the report are contradicted elsewhere by substantial evidence.  Walker stated that Bender needed a "couple hours" of rest after walking half of a block (A.R. 199), another statement at odds with his claim that Bender "cannot move his arms [and] feet" (A.R. 198).  Moreover, Bender himself contemporaneously stated that he walks six blocks to get groceries five days a week.  (A.R. 256-58.)  Walker's claim that Bender "cannot write" (A.R. 198) is impugned by Bender's repeated hand written statements in the Record. (*See, e.g.*, A.R. 204-06.)  The remaining elements in Walker's report are duplicative and do not augment the record.  In light of Bender's own testimony as well as that of all medical examiners, no reasonable ALJ would have reached a different conclusion about Bender's disability status by evaluating Walker's report.

Bender also challenges the ALJ's failure to explain his dismissal of the Berkeley Therapy Institute report signed by clinical intern Adam Forni.  (Pl.'s Mot. 7.)  Between April 7 and June 15, 2006, Bender received weekly treatment under Forni's care at the Berkeley Therapy Institute for psychological problems.  (A.R. 325-34.)  Forni noted that Bender reported a "substantial amount of pain" and was depressed due to the challenges of living with lessened mobility.  (A.R. 327.)  Forni recorded symptoms of "bouts of anger and anxiety" and "insomnia, feelings of hopelessness, and general anhedonia."  (A.R. 327-28.)  Forni concluded that Bender had "Major Depressive Disorder" (Category 296.32 of the DSM IV), with a Global Assessment of Functioning ("GAF") of fifty-eight. (A.R. 329.)  He expected that Bender's condition could improve with "appropriate mental and physical treatment," with "significant changes" possible in a six-month period.  (A.R. 329.)

United States District Court

For the Northern District of California

1    At the hearing, Dr. Freeman, whom the ALJ later credited, noted that "the examiner [Forni]

2  is not a licensed psychologist." (A.R. 61.)  The ALJ was entitled to give the clinical intern's

3  proffered medical opinion less to no weight, because it conveys only a non-medical source's medical

4  diagnosis. § 416.913(a).  The ALJ was not required to consider the report as medical evidence

5  because the evidence was itself not "competent."  *See Vincent v.* Heckler, 739 F.2d 1393, 1395 (9th

6  Cir. 1984).

7    D. OTHER CHALLENGES TO THE ALJ'S OPINION AMOUNT TO HARMLESS ERRORS

8    Bender contends that the ALJ incorrectly restated the record several times, reflecting a

9  failure to properly evaluate the evidence.  (Pl.'s Mot. 8-10.)  First, Bender objects to a stated gap of

10  nineteen months in medical treatment that overlooks a record from Alta Bates Hospital.  (Pl.'s Mot.

11  8.)  Second, the ALJ wrote that Bender's daily activities included walking a mile daily, but this

12  misinterprets testimony offered as a hypothetical maximum, not actual practice.  (Pl.'s Mot. 8-9.)

13  Third, Bender notes that the ALJ misstates the location of the Disability Determination Service by

14  placing it in Illinois and not California.  (Pl.'s Mot. 9.)  Finally, Bender states that the ALJ

15  incorrectly cited to a document in the record and mischaracterized its contents.  (Pl.'s Mot. 9-10.)

16  Because these errors are harmless, they do not provide any basis to challenge the ALJ's decision.

17    *1. Applicable Law*

18    Errors that do not impact the ALJ's decision are harmless or immaterial, and do not entitle a

19  reconsideration of the claim.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008); *see*

20  *also Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990) (finding "immaterial" errors when ALJ

21  misstated claimant's age as 50 instead of 53 and concluded claimant had a GED, which was not

22  established by testimony). The party that challenges an agency's determination on account of an

23  error has the burden to show that prejudice resulted from that error.  *Shinseki v. Sanders*, 129 S. Ct.

24  1696, 1705-06, (2009).

25

26

27

28

**United States District Court**
For the Northern District of California

1    *2. Analysis*

2        Bender misreads the ALJ's opinion by claiming that the ALJ overlooked a 2005 emergency

3    room visit when describing a treatment gap of nineteen months.[2]   The ALJ in fact wrote that the

4    nineteen-month gap specifically regarded "treatment for the claimant's chronic pain symptoms."

5    (A.R. 21.)  The ALJ discussed the gap in light of what he found to be "conservative and intermittent

6    treatment" limited to pain medication, and the "sporadic" nature of the treatment influenced the

7    ALJ's assessment of the impairments' severity.  (A.R. 21.)  The medical record that Bender claims is

8    overlooked was instead generated in response to a separate injury and did not address his chronic

9    pain symptoms.  The 2005 visit covered a head injury sustained from a hit-and-run car accident that

10   does not buttress any disability claim.  Further, contrary to Bender's contention, the ALJ did not

11   overlook the report.  He discussed it within two paragraphs of the alleged omission.  (A.R. 21 (citing

12   A.R. 294-97).)  Bender has identified no error here.

13       Bender next criticizes the ALJ's mischaracterization that Bender walked a mile daily.  (A.R.

14   27.)  In his opinion the ALJ stated, "[Bender's] daily activities of walking a mile, international travel

15   and computer use evidence patent ability to effectively ambulate and use his hands for gross and fine

16   fingering."  (A.R. 27.)  At the hearing, Bender stated he could walk up to a mile, not that it was daily

17   practice.  (A.R. 38.)  The ALJ erred to the extent that his use of the words "daily activities" implies

18   that Bender literally walks a mile every day, but the error is not material.  Bender walked regularly at

19   distances short of a mile, including walking six blocks to get groceries five days a week.  (A.R. 256-

20   68.)  Elsewhere in the record, Bender acknowledged his ability to walk for a mile.  (*See, e.g.*, A.R.

21   216, 338.)  Moreover, the ALJ identified the fact as reflective of Bender's "patent ability to

22   effectively ambulate."  (A.R. 27.)  It was indeed clear that Bender could walk by his own account,

23   and a more artful description would not have altered this conclusion.  Since the error was not a

24   substantial mischaracterization of Bender's capability, and because no conclusions were drawn from

25   it, the error is harmless.  *See Curry*, 925 F.2d at 1131.

26

27   _____

28   [2] Bender also claims that there was not a treatment gap on account of a July 2004 progress note that stated that Bender "[w]ill be able to see doctor Thuc in 6 weeks."  (A.R. 310.)  This merely reflects a possibility, and the record does not contain a record from Dr. Thuc.  As the record stands, the ALJ correctly noted the nineteen-month treatment gap.

**United States District Court**
For the Northern District of California

1        Bender's third objection is that the ALJ incorrectly referred to the location of the Disability

2  Determination Service, placing it in Illinois (the location of the hearing), not California.  (Pl.'s Mot.

3  9.)  Bender correctly identifies a mistake; however, the ALJ's misstatement of the Disability

4  Determination Service's location carries no legal weight.

5        Bender finally states that the ALJ referred to the wrong documents when referring to opinions

6  provided by Drs. Mitchell, Lucila, and Gottschalk.  (Pl.'s Mot. 9.)  Bender is incorrect.  The ALJ

7  correctly cited to exhibits 2A and 3A to demonstrate the date of the doctors' evaluations for his

8  report.  Bender's reason for objecting to the ALJ's reference to these exhibits is unstated, and the

9  Court discerns no basis for prejudice.[3]

10                                   V. CONCLUSION

11        Based on the foregoing reasons, the Court finds the ALJ's decision not fully supported by

12  substantial evidence in the record and in accordance with law.  Accordingly, the court grants

13  Defendant's motion for summary judgment in part and remands this case to the Commissioner for

14  further proceedings not inconsistent with this opinion.

15        IT IS SO ORDERED.

16

17

        Dated:  September 6, 2011

18                                     DONNA M. RYU

                             United States Magistrate Judge

19

20

21

22

23

24

25

26

27

28

---

[3] The reports place fewer limitations on Bender's capabilities than the RFC accepted by the ALJ.

11